# COOK v. SPEARE.

ORPHANS' COURT; JURISDICTION; PAYMENT OF MONEY INTO
COURT; EQUITY.

1. The jurisdiction of the Supreme Court of this District holding a special term for Orphans' Court business is limited by the provisions of the Maryland act of 1798, Ch. 101, and it has no powers not expressly granted by that act or necessarily or reasonably implied from its provisions.
2. That court, holding a special term for Orphans' Court business, has no power upon the petition of a creditor of a decedent, to

require money in the hands of a third person and claimed to be a part of the estate to be paid into court, when the right to such fund is in controversy between the next of kin, and such third person claims an interest in it.

3. The power of a court of equity to order money or securities to be brought into court, in advance of a final decree or determination of the right to it, discussed.

No. 831. Submitted October 4, 1898. Decided November 8, 1898.

HEARING on an appeal by the respondent from an order of the Orphans' Court requiring money to be paid into court, upon the petition of a creditor of a decedent. *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. W. L. Cole* for the appellant.

*Mr. John J. Dolan, Mr. Chas. W. Darr* and *Mr. A. E. L. Leckie* for the appellees.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This is an appeal from an order of the special term of the Supreme Court of this District for Orphans' Court business, requiring certain money to be brought into court and paid over to the Register of Wills.

The facts are peculiar, and the question is as to the power and jurisdiction of the court to require the money to be brought in and surrendered up by the party who holds it, William A. Cook, the appellant in this appeal, to the Register of Wills.

It appears from the facts disclosed in the record, that Mrs. Mary E. Van Sciver died intestate in September, 1896; that she left no property, but there was the sum of $467 due on a policy or certificate of insurance on her life, and for which amount a check was received by and deposited in bank in this District to the credit of Hosea B. Moulton and William A. Cook, attorneys for opposing claimants of the fund, under special agreement. Mrs. Van Sciver left three children— William E. Van Sciver, Minnie H. Hoover, wife of James

A. Hoover, and Mary Monrote, wife of Frank Monrote, of
Fairfax County, Virginia. The fund was denied to be assets
of the estate of the deceased, Mrs. Van Sciver, and there
were opposing claims to it; namely, the Hoovers on the one
side, and William E. Van Sciver on the other—William A.
Cook representing as counsel William E. Van Sciver, and
Hosea B. Moulton as counsel representing the Hoovers.
Mrs. Monrote seems not to have participated in any manner
in the controversy over this fund, or at any rate, no claim
of hers seems to have been recognized. In this state of the
controversy in regard to the fund, the Hoovers and William
E. Van Sciver undertook to settle the matter by putting the
fund in trust, by turning it over to their respective counsel,
Cook and Moulton; and signed the following agreement for
that purpose:

"For a valid consideration, it is hereby mutually agreed,
by and between the subscribers hereto, that the money due
from the Metropolitan Life Insurance Company of New
York on account of the death of Mary E. Van Sciver on
policies held by her in said company, to wit: the sum of
$467.50 be paid to W. A. Cook and H. B. Moulton, trustees,
who shall take and hold said fund in trust for the following
purposes, to wit: After first deducting the usual compensa-
tion for their services as trustees, to wit: ten per cent. of the
amount recovered and attorney's fees and any incidental
expenses connected therewith, they shall disburse said fund·
as follows:

"First. They shall pay off the debts, if any, resting
against the estate of said deceased, including the under-
taker's bill for her burial.

"Second. They shall return to the parties hereto, re-
spectively, the money advanced by them and each of them,
if there shall be sufficient funds in their hands so to do,
and, if not sufficient funds, then they shall pay them *pro
rata*, according to the amount of their advances.

"Third. And the remainder, if any, they shall divide

equally between the parties hereto being the son and daughter of the deceased according to the second provision hereof.

"Witness our hands and seals this 17th day of October, A. D. 1896, at Washington City, D. C.

JAMES A. HOOVER.    [SEAL.]
MINNIE N. HOOVER.    [SEAL.]
WM. E. VAN SCIVER.    [SEAL.]"

Subsequently, application was made by James A. Hoover to be appointed administrator of Mrs. Van Sciver, and that application was resisted by William E. Van Sciver, and the latter was appointed administrator of the deceased on February 12, 1897; and he thereupon gave notice to the trustees holding the fund, that they should not disburse the fund according to the agreement. Thereupon Mrs. Hoover instituted a suit in equity against William E. Van Sciver and others, for the purpose, as it is alleged in the record, of having the question of the right and claim of the respective parties determined and settled, as to the fund in controversy. It is alleged that such suit is still pending; and in that suit, the appellee, Willis R. Speare, an alleged creditor of the estate of the deceased, intervened and was allowed to become a party to enforce his alleged claim against the fund in controversy.

After this, upon some suggestion from the court, as it is alleged, the appellee, as an alleged creditor, filed a petition in the Orphans' Court, setting up his claim, and alleging that the insurance fund in the hands of Cook and Moulton was the only money from which his claim could be paid, and he prayed that an order might be passed requiring William E. Van Sciver, administrator, and Cook and Moulton, as officers of the court, to bring the fund into court, and pay it over to the Register of Wills; and that said parties should be required to answer the petition and show cause, if any they had, why the order prayed for, requiring

the money to be brought in and paid over to the Register, should not pass.

The rule was accordingly laid, and the parties severally answered it; and they all denied that they were liable to be required to produce the money in court to be paid over to the Register. William E. Van Sciver alleges and insists that the fund belongs to him, in his own personal right, and that it forms no part of the estate of his deceased mother, and is in no way liable for her debts. He admits that the fund came into the hands of Cook and Moulton to be held by them as trustees, until it should be determined whether his sister, Mrs. Hoover, was entitled to said fund, or any part thereof; and he says further, that he has never received one cent of the fund, though he has been informed that said Moulton has paid over to said Cook the money received by them less certain fees which said Moulton assumed the right to retain, and did retain, though he, the respondent, never agreed to pay any such fees, and never employed said Moulton; and he denies the right of said Moulton to have or retain as fees any portion of said money. He says he is now advised that it was not necessary for him to become administrator of his mother's estate, but he was advised thereto by his then counsel, the said William A. Cook, the appellant in this appeal. He says in his answer that he is quite willing that the petitioner Speare may have an opportunity of establishing his claim as against the fund; and he therefore prays that Cook and Moulton may be required to bring the money into court.

Moulton, in his answer, says that the only part of the fund received by himself and Cook, under the agreement, that he now has in his hands, is the sum of $98.37, which he retained as his part of the commission on the fund and as counsel fee, and the balance of the fund, being the sum of $369.13, was paid over to said Cook, who now holds the same, as respondent supposes.

The respondent, William A. Cook, in his answer, denies

that the petitioner Speare has shown any such state of case as entitles him to the relief that he asks, and he prays to to have the benefit of a demurrer to the petition. He also objects to the power and jurisdiction of the court to pass the order requiring cause to be shown why the fund should not be brought into court; and while he admits that he has in his hands, of the fund, the sum of $369.13, the remainder after deducting the commission and fee to Moulton, and for which he says he is willing to account at the proper time and place, he alleges that he has an interest in and a claim upon the said fund so in his hands, and that he has a lien thereon to secure his said claim.

The court, notwithstanding the objection taken to its jurisdiction, and the adverse and conflicting claims set up to the fund, by its order of the 1st of July, 1898, ordered, decreed and directed that said William A. Cook pay to the Register of Wills the sum of $369.13 received by him as attorney for William E. Van Sciver, administrator of estate of Mary E. Van Sciver, the said sum to be paid to the Register of Wills within ten days from the date of the order, and to be held by the Register *subject to the further order of the court as to the ultimate distribution of the fund.* And it was further ordered that the right, if any, of said Cook and Moulton to retain any part of the original sum of $467.00 as trustees or attorneys should be held in reserve for the further order of the court.

The court in passing this order was not invested with and authorized to exercise the broad chancery jurisdiction by which courts of equity may order money or securities to be brought into court, to await the final disposition of the case. But it was acting, and could act, only under a special statutory jurisdiction, conferred upon it by the testamentary act of Maryland of 1798, Ch. 101, in force in this District; and the question here is, whether there is found in the statute any power to authorize the making of the order appealed from. No express provision, nor any provision from which

such power is necessarily or reasonably implied, has been pointed out, and we fail to find such in the statute. On the contrary, incidental and constructive powers are expressly forbidden to be exercised by the court.

The power to order money or securities to be brought into court, in advance of the final decree or determination of the right to it, is a high and delicate power, pertaining to the exercise of the jurisdiction of a court of equity, and not to other special statutory jurisdictions, unless the power be given by the terms of the statute, or by necessary implication from the terms employed. Even a court of equity, in the exercise of this large but delicate power, will not order money or securities to be brought into court before final hearing, it may be, for an indefinite time before such hearing, except where it is made to appear that he who asks for the order has an interest in the money or fund proposed to be called in, and that he who has the fund in his hands has no equitable right to it; and the facts from which this appears must be found in the case as it then stands, either admitted or so established as to be open to no further controversy at any subsequent stage of the proceedings. *McKim* v. *Thompson*, 1 Bland Ch. 150, and the cases cited and reviewed by Chancellor Bland in that case. And acting upon this established rule, in the case of *Peacham* v. *Daw*, Mad. & Geld. 98, where a bill was filed against a defendant, alleging that a certain sum of money claimed by her as a gift from the testator shortly before his death, continued to be part of the assets of his estate, and, upon the coming in of the answer the plaintiff moved that the defendant should pay the money into court, on the ground that she had admitted circumstances in her answer which made it clear that it was part of the testator's assets, Sir John Leach, V. C., refused the application, observing that the proper course was to set the cause down upon bill and answer, and that it was matter of final decree. 3 Dan. Ch. Prac. 2014. See, also, *Dubless* v. *Flint*, 4 M. & Cr. 502. And it is an estab-

lished principle, that a court of equity will not order money
into court where there is no admission of .the plaintiff's
right, still less will it do so where it is denied by the answer;
therefore, if a bill be filed stating a settled account, and by
the answer it is denied that the account is just, the plaintiff
can not move that the defendant be required to pay into
court the money on the account so admitted, as he might
do if the account were admitted to be correct.   2 Madd. Ch.
Pr. 523; *Richardson* v. *Bank of England,* 4 M. & Cr. 177.

This power of directing and compelling parties, whether
technical parties to a pending proceeding or otherwise, to
deliver or pay over money or property, or to bring funds
into court, was never supposed to have been conferred upon
the Orphans' Court by the act of 1798, Ch. 101, because
in such applications are generally involved questions of
common law or equity jurisdiction, as to the rights of the
parties concerned, that could only be tried and determined
by the courts of common law or equity.   This was ex-
pressly decided in the case of *Scott* v. *Burch,* 6 H. & J. 67,
by the Court of Appeals of Maryland, in 1823.   In that
case it was held that the Orphans' Court could exercise no
constructive powers, under the act of 1798, Ch. 101, Subch.
15, Sec. 20; and therefore it had no right to order the surety
of an administrator to redeliver the property of the intestate
to the administrator, *qua* administrator, of which the surety
got possession by a previous order of the Orphans' Court, on
his application for counter-security.   In that case the court
said: "To avoid the necessity of a recurrence to incidental
or implied authority, the powers of the Orphans' Court, both
in relation to the subject-matter of its jurisdiction, and the
forms of its proceeding, are declared with the most formal
and precise minuteness.   Does this law, then, invest the Or-
phans' Court with the jurisdiction and powers of decreeing
or ordering the goods, in any event or on any terms, to be
delivered over by the surety to the administrator *qua* admin-
istrator?   Upon examination of its provisions no such power

can be found, and the exercise of such a power of revocation can only be countenanced by the doctrine of constructive authority; but recourse to such a principle is emphatically condemned by the express terms of the statute." And the court held that the administrator should resort to a different *forum* for redress. It was not until 1831 that the power was conferred upon the Orphans' Court to direct and require of executors, administrators and guardians to bring money or securities into court, to be deposited or invested as the court might direct. By Sections 4 and 5 of the act of 1831, Ch. 315, supplementary to the act of 1798, Ch. 101, the power is expressly conferred upon the Orphans' Courts of Maryland, and has been extensively used in that jurisdiction; but the act of 1831 forms no part of the statute law in force in this District.

In the pending suit in equity, referred to in the proceedings in this case, the questions as to the conflicting claims to the fund, if proper parties and proper allegations are made, can well be adjudicated and settled; and upon the determination of the right to the fund, the payment over to the party or parties entitled may be compelled by the court. But such adjudication of title and coercion of payment are judicial acts not within the scope of the special statutory jurisdiction of the Orphans' Court.

It follows that the order appealed from must be reversed, and the cause be remanded that the petition for the rule may be dismissed.

*Order reversed and cause remanded.*