Jacob T. Zukerman, J.
This is a petition to establish the paternity of a child born out of wedlock in which the putative father died before the child was born. The facts are these. The mother, now 18, and. the putative father, at the time of his death, aged 17, had sexual relations from April, 1966 through April, 1967. The testimony of the petitioner, the respondent’s father and mother, his two sisters, his brother’s wife and his *968 closest friend all indicated that the couple had planned to be married as soon as the young man was graduated from high school at the end of June, 1967; that the boy’s parents had set up an apartment for them in the basement of their own house; that the couple had discussed the name of the child in their presence and that the putative father had orally on more than one occasion acknowledged the still unborn child to be his. On June 3, 1967, the putative father was murdered. The child was •born on June 27,1967. The child, allegedly, was given the name which had been selected by the deceased putative father.
The petition was filed for the purpose of changing the name of the child to that of his alleged putative father.
The question is raised whether an order of filiation may be made against a deceased alleged putative father. There is little question in my mind about the social value of making such a finding. Here we have a petition joined in by all of the members of the deceased’s family, who wish to accept the child as part of their family.
A filiation proceeding under modern law is a civil action, designed to protect the welfare of the child and the statutes governing that proceeding should be liberally construed. (Schaschlo v. Taishoff, 2 N Y 2d 408 [1957].) At common law an illegitimate child was filius nullius, the child of no one; the community, not its natural parents, was liable for its support. (Duerr v. Wittmann, 5 A D 2d 326 [1958].) It is now agreed that “the law does not and should not look with favor upon suspending the question of parentage of a child in limbo ” (Matter of ABC v. XYZ, 50 Misc 2d 792, 796-97 [Family Ct., 1966].)
The Legislature has impliedly recognized the power of the Family Court to grant an order of filiation after the death of the putative father. In 1952, the Surrogate’s Court had enforced an out-of-court acknowledgment of paternity and a support agreement against the estate of a deceased father. (Matter of Cirillo, 114 N. Y. S. 2d 799 [Surrogate’s Ct., 1952].) Thereafter the Legislature did provide in section 513 of the Family Court Act that support proceedings may be brought after the death of a father only if a court support order or judicially approved settlement had been made .prior to the father’s death. That portion of the Cirillo decision relating to the establishment of paternity was left standing.
The right of a child to establish his paternity and claim his family allowance against the estate of his deceased father has been recognized in California, Woodward v. Newton (230 Cal. App. 2d 113, 118 [1964]) stating: * ‘ Modern society shrinks from application of the Old Testament (Exodus 20) com *969 mandment ‘ visiting the . iniquity of the fathers upon the children ’
There seems to be further basis for such an order of filiation after the death of the putative father in the recently adopted section 4-1.2 of EPTL which expands the inheritance rights of illegitimates, declaring that they may inherit from their parents and from their maternal kindred. This particular section provides that inheritance from a putative father is, however, dependent upon the issuance of an order of filiation during the life of the father. This is a recognition of the power of this court to issue such an order after the death of a putative father.
There is no question that in making a finding in the case of a deceased putative father, there is need for the most careful examination of the evidence, for there is no respondent alive to make denial.
Certainly the petitioner’s case would have been stronger if the deceased had made a written acknowledgment of paternity. But even in the absence of such written acknowledgment, we must ask ourselves what possible improper motives there might have been in the joining in this petition not only by the deceased putative’s father’s parents but by his siblings. Their only desire appears to be one to give the child his father’s family name, a purpose which is most laudable from a social point of view.
What possible harm can come from granting this petition, we ask ourselves, particularly in the light of the fact that there is no one in opposition to the petition? We can foresee none.
I feel that it has been conclusively established that the deceased admitted his paternity on more than one occasion and that he looked forward to marrying the child’s mother, having made all kinds of plans for this.
Accordingly, I find that the deceased Jerry Cole was the father of the child, Monroe Ralph Gordon, born June 27, 1967. Order of Filiation. No order of support.