Ana Betis ANDRADE, Appellant,

v.

Vera Ann JACKSON, Appellee.

No. 12687.

District of Columbia Court of Appeals.

Submitted May 24, 1978.

Decided May 14, 1979.

Douglas G. Dahlin and Willard O. Vick, Washington, D. C., were on the brief for appellant.

No appearance was entered for appellee.

Before NEWMAN, Chief Judge, GALLAGHER, Associate Judge, and HOOD, Chief Judge, Retired.

GALLAGHER, Associate Judge:

This case raises questions concerning the jurisdiction of the Superior Court Family Division to annul a marriage, to determine the existence of a common-law marriage, and to declare paternity after the death of the putative spouse/parent. Appellant's (plaintiff's) situation is unusual. Her "childhood sweetheart," decedent in this case, moved to the District of Columbia in 1971 from their native country, El Salvador. Decedent's plan was to earn enough money in the United States to send for appellant, marry her, and live with her in this country. Unable to obtain employment sufficiently lucrative as an illegal alien, decedent sought to obtain United States citizenship by marrying appellee (defendant), an American woman he had never met before. Decedent and appellee were married in Virginia in March 1973, and decedent paid her $700 for this service. Unfortunately for decedent, appellee absconded with the money without living up to her side of the illegal[1] bargain—that is, without signing decedent's citizenship papers. She has been neither seen nor heard from since. She has made no appearance on appeal. Attempts to locate her have been fruitless.

Decedent asked appellant to leave El Salvador and to join him in the District of Columbia. She did so, and the two of them lived here together, for all intents and purposes as husband and wife, from November 1973 until decedent's death in an auto accident in Maryland on June 25, 1976. They had two children, one of whom was born posthumously in January 1977. At no time prior to his death did decedent obtain a divorce from appellee.

Appellant now desires to bring a wrongful death action and to receive life insurance benefits on account of decedent's fatal auto accident. In order to entitle herself and her children to do so, she first brought this action against appellee asking the Family Division, in the exercise of its equity powers and under D.C.Code 1973, § 11–1101, (1) to annul decedent's marriage to appellee in March 1973, as having been void *ab initio* due to appellee's fraud on decedent, (2) to declare appellant herself as decedent's lawful widow on the basis of the alleged common-law marriage that arose between them in November 1973, and (3) to declare their children to be the lawful heirs of decedent. The trial court found as a matter of law that the Family Division of the Superior Court lacked jurisdiction to grant the relief so requested and dismissed appellant's action. This appeal followed.

---

1. Decedent could have been prosecuted for soliciting to defraud the United States and to procure citizenship unlawfully. *See generally* *Lutwak v. United States,* 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953); 18 U.S.C. § 1425 (1970).

Appellant contends that the trial court erred in holding that it was without jurisdiction to entertain her declaratory judgment action. She further claims that this declaratory relief is necessary because no other form of action can grant all the relief requested in one proceeding; that a probate proceeding is "inappropriate" because of the small size of decedent's estate; and that a paternity suit is unnecessary where paternity has been acknowledged by the putative father. Resolution of this issue requires an examination of the jurisdictional basis of the Superior Court.

Prior to the adoption of the District of Columbia Court Reform and Criminal Procedure Act[2] (Court Reform Act), the civil jurisdiction of the Superior Court was narrowly limited. By statute,[3] the Court of General Sessions, the predecessor to the Superior Court, had jurisdiction only over those civil actions where the amount claimed did not exceed $10,000. The court could exercise only such equitable powers as was necessary to effectuate its limited jurisdiction. See *Mahoney v. Campbell,* D.C. App., 209 A.2d 791 (1965); *Brewer v. Simmons,* D.C.App., 205 A.2d 60 (1964). Jurisdiction over other civil actions involving matters of local law including probate matters and general equity jurisdiction was lodged in the United States District Court for the District of Columbia. See D.C.Code 1965, § 11–521. Moreover, the jurisdiction of the federal district court, sitting as probate court, was narrowly circumscribed by statute. See D.C.Code 1961, § 11–512.[4]

This dual court system with its concomitant statutory restrictions on the jurisdiction of the local courts in civil matters was needlessly complicated and often inefficient, rendering it impossible for one tribunal to adjudicate all the claims of the parties in one action. However, this dual system was abolished with the enactment of the Court Reform Act. Under the Act, the Superior Court was vested with jurisdiction over all civil actions at law or equity in the District of Columbia. See D.C.Code 1973, § 11–921. According to the drafters of the new legislation, the purpose of the Act "was to provide for . . . the creation of a local, unified and modern court system for the District of Columbia," H.R.Rep. No. 91–907, 91st Cong., 2d Sess. 23 (1970), and "to bring together those lower courts which [did] exercise limited jurisdiction over local matters." *Id.* at 34. Thus, in establishing this unified local court system, Congress divested the federal courts of jurisdiction over local matters, restricting those courts to those matters generally viewed as federal business, see D.C.Code 1973, §§ 11–501, –502, and conferred upon the Superior Court the jurisdictional power to adjudicate local civil actions.[5]

Therefore, as presently constituted, the Superior Court is no longer a court of *limited* jurisdiction, but a court of general jurisdiction with the power to adjudicate any civil action at law or in equity involving local law. Although Superior Court is separated into a number of divisions, these functional divisions do not delimit their power as tribunals of the Superior Court with

---

**2.** Pub.L.No. 91–358, 84 Stat. 473.

**3.** D.C.Code 1967, § 11–961.

**4.** Like its predecessor, the Orphans Court, the probate court had "no jurisdiction to decide a dispute regarding the title or the right to possession of personal property." See D.C.Code 1961, § 11–512; *White v. Schwartz,* 112 U.S. App.D.C. 331, 332, 302 F.2d 916 (1962); *Watkins v. Rives,* 75 U.S.App.D.C. 109, 125 F.2d 33 (1941); *Jones v. Dunlap,* 73 App.D.C. 59, 115 F.2d 689 (1940). Nor could the probate court adjudicate claims by third parties against executors or administrators. See *Miniggio v. Hutchins,* 43 App.D.C. 117 (1915); *Richardson*

*v. Daggett,* 24 App.D.C. 440 (1940); *Cook v. Speare,* 13 App.D.C. 446 (1898).

**5.** Congress also transferred probate jurisdiction to the Superior Court. The Court Reform Act vested the Superior Court with jurisdiction over any civil actions at law or in equity, and over all probate matters. See D.C.Code 1973, § 11–921(a)(5–6). Moreover, under the Act, there is no longer a "Probate Court" as a court of limited jurisdiction. Rather the jurisdiction previously vested in that court is now vested in the Superior Court, a court of general jurisdiction. See D.C.Code 1973, §§ 16–3101 and 18–101.

general jurisdiction to adjudicate civil claims and disputes. *See* D.C.Code 1973, § 11–910.

As to appellant's first two requests, in a case similar to this, *Nunley v. Nunley,* D.C. App., 210 A.2d 12 (1965), relying on D.C. Code 1961, § 11–504, we decided that the Domestic Relations Branch of the Court of General Sessions,[6] did not have jurisdiction to annul the marriage of a decedent where the primary object of the suit was to bar decedent's putative wife from participation in his intestate estate. We also held there that "orderly procedure requires that the Probate Court . . . should consider the issues attempted to be pursued . . here. If validity of the marriage to decedent in Maryland is challenged by the [appellants] in the probate proceedings, that court has the power to fully investigate and determine whether the marriage was void *ab initio* or voidable and must resolve whether appellee is in fact and in law a 'surviving wife' before it can approve any distribution to her from the estate." *Id.* at 15–16, *citing Gordon v. Matthews,* 106 U.S. App.D.C. 400, 403, 273 F.2d 525, 528 (1959).[7]

■■ The question before this court is whether the jurisdictional rule enunciated in *Nunley* still applies in view of the subsequent enactment of the Court Reform Act. We hold that it does not. While the Superior Court by statute has five divisions, Civil, Criminal, Family, Tax, and Probate, D.C. Code 1973, § 11–902, each division possesses the undivided authority of the Court. However, we agree with *Nunley v. Nunley,* *supra,* insofar as it holds that the interests in orderly judicial procedure will be best served if a person's status as lawful widow, heir, or stranger to an intestate be considered in the first instance by the division of the Superior Court established for that purpose. *See Gordon v. Matthews, supra* at 403, 273 F.2d at 528. The estate in the present case may have few assets, but it does own a cause of action which, if successful, may bring a substantial amount of money into the estate. Consequently, there is the same interest in orderly procedure here as there was in *Nunley.* The ascertainment of the heirs and surviving widow is anterior to the prosecution of a wrongful death action and to the distribution of any damages recovered. This is a task normally assigned to the Probate Division of the Superior Court. Orderly procedure requires that these issues be resolved in the first instance by the Probate Division.

■ As to appellant's third request for relief, we agree with the trial court that paternity cannot be declared without joining the putative father or his estate as a party to the suit even though no order for support has been requested. To do otherwise would, as was stated by the trial court, amount to making a decision "in a vacuum." *Cf.* Super.Ct.Dom.Rel.R. 405(a) and (b).[8]

■ The Family Division, however, should promptly transfer this case to the Probate Division so that the issue of wheth-

6. The predecessor to the Family Division of the Superior Court.

7. In *Gordon v. Matthews,* the heirs of a putative husband sought to utilize the federal declaratory procedure to challenge the validity of a foreign divorce of a person claiming to be the wife of the putative husband. The District Court dismissed the action holding that it lacked jurisdiction over the claim. The United States Court of Appeals agreed with the District Court. Relying on D.C.Code 1951, § 11–504, the court stated:

The proper forum to determine that question in the first instance is the court specifically set up to determine claims to property of person dying intestate. This task has been delegated to our probate court by statute.

[*Id.,* 106 U.S.App.D.C. at 403, 273 F.2d at 528.]

8. Other courts have barred paternity suits brought after the death of the putative father. *See* Annot., 58 A.L.R.3d 188 (1974). However, without deciding the issue for this jurisdiction, we note that in some circumstances posthumous paternity suits have been allowed where the plaintiff is not seeking a support order. *Gordon v. Cole,* 54 Misc.2d 967, 283 N.Y.S.2d 787 (1967); *see* Annot., 58 A.L.R.3d 188 (1974). In reference to a wrongful death action, it is noted that there is testimony in this record that Mr. Andrade acknowledged the children as his. *See* Md.Cts. & Jud.Proc.Code Ann. §§ 3–901(b), 3–904(a), (g) (Michie Cum.Supp.1977).

er appellant is decedent's lawful widow may be ascertained. Then appellant can expeditiously petition for letters of administration in the probate court. The court will then no doubt decide, as soon as circumstances permit, whether appellee's marriage to decedent was void *ab initio* and, if so, whether appellant is decedent's lawful widow.[9]

In view of our holding, we are of the view that the proper procedure to be employed in cases such as this is not dismissal of the action, for that is appropriate when there exists no statutory basis for the assertion of jurisdiction. When the jurisdictional nature of an internal court division bars the requested adjudication and relief, we believe the appropriate remedy would be simply to transfer the case to the appropriate division of the trial court.

*Reversed and remanded for proceedings consistent with this opinion.*

**9.** The significance of whether decedent's marriage to appellee was void *ab initio* or merely voidable is that a marriage void *ab initio* is subject to collateral attack at any time whereas a marriage merely voidable cannot be annulled after the death of either spouse. *Loughran v. Loughran,* 292 U.S. 216, 226, 54 S.Ct. 684, 78 L.Ed. 1219 (1934); *Nunley v. Nunley, supra.* The right to annul a marriage procured by fraud is generally considered personal to the defrauded party. A marriage procured by fraud therefore cannot be annulled after the party's death by his heirs. 4 Am.Jur.2d Annulment of Marriages § 76 at 492; *see Sears v. Sears,* 110 U.S.App.D.C. 407, 409, 293 F.2d 884, 886 (1961). A marriage may be considered void *ab initio* because the parties lacked the proper consent to create a valid marriage if this is not precluded by the "clean hands" doctrine.

*Ramshardt v. Ballardini,* 129 N.J.Super. 445, 324 A.2d 69 (1974). Whether in this jurisdiction a marriage may be deemed void for illegal purpose or lack of consent under the circumstances of this case is a question we do not decide here. Appellant will be free to present this issue to the probate court if this is desired.

We also note that in view of the Supreme Court's decision in *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), which held that statutory discrimination against illegitimacy is violation of equal protection, appellant will also be in a position to protect the interests of her children in the proceedings in the probate court.

Appellant would appear to have adequate time to take steps to protect her position in relation to the statute of limitations.