N. R., Individually and as Next Friend of N. R. J. D., Plaintiff-Appellant,

v.

R. J. D., Defendant-Respondent.

No. 39520.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 21, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 1979.

Application to Transfer Denied
Nov. 14, 1979.

Deeba, DeStefano, Sauter & Herd, James J. Sauter, St. Louis, for plaintiff-appellant.

Murphy, Schlapprizzi & Lane, Donald L. Schlapprizzi, Albert Lebowitz, St. Louis, for defendant-respondent.

STEWART, Judge.

Action was brought against R.J.D., defendant, by N.R. as next friend of N.R.J.D., her infant daughter, and on her own behalf. The amended petition sought to have defendant declared the natural father of N.R.J.D. and for support; the mother also asked for custody and by a fair reading of the petition she sought reimbursement for lying in expenses.

The action was originally filed on November 4, 1975. Defendant filed an answer and counterclaim.[1] Discovery was had including depositions. Defendant died on August 7, 1976. Suggestion of death and motion to substitute party was filed on August 12, 1976. On November 8, 1976, after an administrator had been appointed, plaintiff filed a motion requesting that the administrator of the Estate of R.J.D. be substituted as the real party in interest. This motion was denied. Defendant then filed a motion to dismiss after which plaintiffs filed a motion seeking reconsideration of the court's action with respect to the motion for substitution of party. At the same time plaintiff sought leave to file an amended petition. In Count I of the proposed amended petition the child through its next friend sought a declaration of paternity and a determination of heirship. The mother sought reimbursement for lying in expenses for herself and for moneys expended for pediatric services for the child. The proposed amendment did not seek support for the child. The court denied leave to file the amended petition and sustained J.R.D.'s motion to dismiss.

We consider first the proposed second amended petition because of one issue sought to be raised by that petition and which plaintiffs seek to present at this level. By the proposed amended petition, in addition to a determination of paternity, the infant plaintiff sought a determination of heirship. In seeking to be determined the heir of a putative father the illegitimate child, of necessity, attacks the constitutionality of our statutes on descent and distribution because it has been held that under our statutes an illegitimate child may not inherit from its natural father and the natural father may not inherit from his illegitimate child. §§ 474.060, 474.070, *Hahn v. Hammerstein*, 272 Mo. 248, 198 S.W. 833 (1917).[2]

Plaintiff contends that the circuit court had jurisdiction to determine heirship under § 527.040 which authorizes the circuit court by way of declaratory judgment "To ascertain any class of creditors, devisees, legatees, heirs, next of kin or other . . . ."

This issue is not before us for our determination because the circuit court had no jurisdiction to entertain this issue under

---

1. The counterclaim was dismissed and is not a consideration on this appeal.

2. A similar statute has been held to be unconstitutional. See *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977).

the circumstances of this case. The estate of R.J.D. had been opened before plaintiffs asked leave to amend. The amended petition sought a determination of heirship for the first time.

By § 472.020 RSMo 1959 "[t]he probate court has jurisdiction over all matters pertaining to probate business . . . including jurisdiction of . . . the determination of heirship." When the application for letters was filed with the probate court in August of 1976 that court acquired jurisdiction to determine heirship and no other court of concurrent jurisdiction could interfere with its action. *Younghaus v. Lakey*, 559 S.W.2d 30, 31 (Mo.App.1977).

The issue of heirship was the only significant amendment to the first amended petition. The first amended petition contains all allegations necessary to a full consideration of the other issues to be considered by this court. We will confine our discussions to that petition.

The trial court dismissed plaintiff's first amended petition. This action gives rise to the issue of whether the court could make a determination of the status of N.R.J.D. and entertain the claim of N.R. for lying in expenses after the death of defendant.

Primarily we note that at common law the illegitimate child was the child of no one. It had no standing. Under the common law of Missouri the father was not responsible for its support. *State ex rel Canfield v. Porter*, 292 S.W. 85 (Mo.App. 1927). This harsh rule has been all but abrogated. It has been held that the equal protection clause of the United States Constitution prohibits the states from discriminating against illegitimate in favor of legitimate children. *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). *Glona v. American Guarantee and Liability Insurance Co.*, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968).

▮▮▮▮ The father is primarily liable for the support of his legitimate child and he is now liable for the support of his illegitimate child. *S——— v. W———*, 514 S.W.2d 848 (Mo.App.1974). Moneys spent by the moth-

er or by a third person to provide for the child and for lying in expenses are recoverable under the theory of quasi-contract. *Swanson v. Swanson*, 464 S.W.2d 225 (Mo. 1971). See also *V——— v. S———*, 579 S.W.2d 149 (Mo.App.1979). As a general rule actions arising out of contract do not abate upon the death of the defendant. *Stein v. Bruce*, 366 S.W.2d 732 (Mo.App. 1963).

▮▮▮▮ The action for lying in expense being contractual in nature would survive the death of the putative father. An essential element of an action to recover such expenses is the paternity of the deceased. The Declaratory Judgment Act, § 527.010 RSMo 1969 provides "The Circuit courts . . . shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. . . ." An action for declaratory judgment is the proper vehicle for determining the legal status of a child as the adoptive child or as the natural child of adoptive or natural parents. *S——— v. W———, supra* [2] at p. 853[2].

▮▮▮ An action may be brought to establish the status of a person as the adoptive child of an alleged adoptive parent after the death or disability of the alleged adoptive parent. See *Keiser v. Wiedmer*, 263 S.W.2d 63 (Mo.App.1953) and *Mize v. Sims*, 516 S.W.2d 561 (Mo.App.1974).

▮▮▮ Whether an action for the sole purpose of establishing the status of an illegitimate child, or as an element of an action that survives the death of a defendant, abates upon the death of the putative father, is an issue of first impression in Missouri. In most states where the issue has been determined the action for paternity is created by statute and it has been held that the action abates in the absence of a statute to the contrary. 10 Am.Jur.2d Bastards § 97. In other states it is said that, being governed by the common law, the action abates because such actions abated at common law. The cases we have read holding the latter view cite no authority for the assertion that the action abated at common

law. See *McKenzie v. Lombard*, 85 Me. 224, 27 A. 110 (1892) and *KK v. Estate of MF*, 145 N.J.Super. 250, 367 A.2d 466 (1976). If there was no such action at common law as our cases indicate, it follows that there was no action to abate at common law. This casts some doubt upon the assertions made in *McKenzie* and in *KK*.[3] The duty to support a legitimate or illegitimate child terminates upon the death of the person liable for support. *Fower v. Fower Estate*, 448 S.W.2d 585 (Mo.1970). The early cases in which the rule was announced sought a determination of paternity and for support. *Myers v. Harrington*, 70 Cal.App.680, 234 P. 412 (1925). *McKenzie v. Lombard, supra.* That part of the action seeking support for the minor child would abate. It does not follow that the action for a declaration of the status should abate.

The tendency toward the establishment of the paternity of an illegitimate child after the death of the putative father can be seen in such cases as *In Re Gordon*, 54 Misc.2d 967, 283 N.Y.S.2d 787 (1967) and *Henry v. Rodd*, 95 Misc.2d 996, 408 N.Y.S.2d 745 (1978). If an action to establish the status of a person as an adoptive child survives the death of the adoptive parent, to hold that an action to establish the status of an illegitimate child abates would seem to discriminate against the illegitimate child. *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); *Glona v. American Guarantee and Liability Insurance Company*, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968); *R_____ v. R_____*, 431 S.W.2d 152 (Mo.1968).

Our trial courts are capable of discerning the truth and determining issues presented to them. We can find no logical reason to hold that an action to establish the paternity of an illegitimate child abates upon the death of the putative father. "The law . . . should not look with favor upon suspending the question of parentage of a child in limbo . . . ." *A.B.C. v. X.Y.Z.*, 50 Misc.2d 792, 271 N.Y.S.2d 781, 785 (1966).

We hold that the action to determine the status of N.R.J.D. did not abate upon the death of R.J.D. That part of the action seeking support for the child did abate.

■ The mother's action for lying in expenses is in the nature of an accrued debt or quasi-contract. Such actions do not abate upon the death of the debtor. *Wells v. Goff*, 361 Mo. 1188, 239 S.W.2d 301 (1951).

■ The paternity of the child is a necessary element of the mother's action. Defendant cites *Charles v. James*, 56 Misc.2d 1056, 290 N.Y.S.2d 993 (1968) for the proposition that in an action for lying in expenses determination of paternity must be made prior to the death of the defendant. That case is not appropriate because the child in that case had been adopted by others before the action was brought. As the court said at p. 995:

Once an order of adoption is entered by a court the question of a child's paternity is no longer in doubt. By the very order of adoption the child's paternity is established and the adoptive parents become the natural parents and a new certificate of birth is ordered reflecting that change.

What we have said above with respect to the right of the illegitimate child to have his status determined would provide the opportunity for proof of this element of the mother's case.

■ Once the status of the child is determined in this cause it would be res judicata as to that issue so far as the proceedings in the probate court are concerned. Although the probate court is now a division of the circuit court only minor changes have been made to § 472.020.[4] The title of

---

3. See Vol. 1 Matthew Bacon's A New Abridgment of the Law, p. 746, Bastardy (7th Ed. 1832).

4. "The probate division of the circuit court may hear and determine all matters pertaining to probate business, to granting letters testamentary and of administration, the appointment of guardians of minors and persons of unsound mind, settling the accounts of executors, administrators and guardians, and the sale or leasing of lands by executors, administrators

the statute still refers to the "jurisdiction" of the probate division of the circuit court. It is thus apparent that dependent upon the determination of the present action the probate court could have jurisdiction to make a determination of heirship if N.R.J.D. is found to be the child of R.J.D. At that time the constitutional question of the validity of the statutes on descent and distribution would be ripe for determination.

The judgment of the trial court is reversed and the cause is remanded for further proceeding consistent with this opinion.

STEPHAN, P. J., and KELLY, J., concur.

and guardians, including jurisdiction of the construction of wills as an incident to the administration of estates, of the determination of heirship, of the administration of testamentary and inter vivos trusts, of mental incompetency proceedings as provided by law and of such other probate business as may be prescribed by law."