**Jose SANCHEZ, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 05–CF–297.

District of Columbia Court of Appeals.

Argued Feb. 15, 2007.

Decided April 5, 2007.

prosecution, declared a mistrial in the belief that the court no longer had jurisdiction to proceed to verdict, hence that a mistrial was necessary. We hold that the judge erred—that in fact the court had statutory authority to proceed with the trial to verdict—and that, consequently, appellant's retrial for the re-indicted crime leading to his conviction was barred by double jeopardy.

Justin Dillon, with whom Patrick O'Donnell, Washington, DC and Amy Richardson, were on the brief, for appellant.

Valinda Jones, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the brief was filed, and Roy W. McLeese III and Matthew P. Cohen, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, FARRELL, Associate Judge, and STEADMAN, Senior Judge.

FARRELL, Associate Judge:

■ Retrial of a criminal defendant after a mistrial over his objection and unsupported by "manifest necessity" violates double jeopardy. *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). The trial judge here, after being informed by the Assistant United States Attorney mid-trial that appellant, a juvenile, had been mistakenly indicted for a crime that *did not* subject him to adult

**I.**

The grand jury indicted appellant, who was sixteen years old at the time of the offense, for assault with intent to kill while armed (AWIKWA), D.C.Code §§ 22–401, –4502 (2001), and related offenses, all arising from the shooting of Cristobal Serpas in August 2004. A jury trial began on November 29, 2004, and continued through two days of prosecution witnesses. Before trial resumed on the third day, however, the prosecutor informed the judge of "a potential jurisdictional defect" in that none of the charges in the indictment was among those listed in D.C.Code § 16–2301(3)(A) (2001) as excluding from the definition of a "child," and thereby subjecting to adult prosecution, a juvenile of appellant's age charged with specific offenses.[1] Specifically, the indictment charged AWIKWA, whereas the correct charge—the prosecutor acknowledged—would have been assault with intent to commit murder while armed (AWIMWA). *See Logan v. United States,* 483 A.2d 664, 676 (D.C.1984) ("§ 16–2301(3)(A) ... au-

---

1. Section 16–2301(3), part of the definitional section of the code subchapter dealing with "proceedings regarding delinquency, neglect, or need of supervision," provides in relevant part:

 (3) The term "child" means an individual who is under 18 years of age, except that the term "child" *does not include* an individual who is sixteen years of age or older and—

 (A) charged by the United States attorney with (i) murder, first degree sexual abuse, burglary in the first degree, robbery while armed, or assault with intent to commit any such offense, or (ii) an offense listed in clause (i) and any other offense properly *joinable with such an offense;*

 (B) charged with an offense referred to in subparagraph (A)(i) and convicted by plea or verdict of a lesser included offense.... [Emphasis added.]

thorize[s] the prosecution of certain juveniles as adults only when they are charged with an assault committed with a *malicious* intent to kill," *i.e.*, AWIM) (emphasis added).[2]

There followed a lengthy discussion between the judge and the parties about available remedies. The prosecutor initially thought that "this kind of defect may be waivable," but opined that "the safer course here is probably to think about it as [a lack of] subject matter jurisdiction. That's a conclusion we've come to." Relying on the Supreme Court's decision in *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), he asked the judge to "grant a mistrial and find that you had to do it because of manifest necessity," so that appellant could be reindicted. Defense counsel, apparently unaware beforehand of the defective charge, asked and received a recess to consult with the Public Defender Service (PDS) about what to do. After the recess, counsel was initially silent when the judge asked if either party "disagrees that the case properly is to be terminated at this point." A transcript-page later, however, she stated that the advice she had received from PDS was "not to agree to the mistrial, [but rather] to ask to have the case dismissed with prejudice." The prosecutor countered that if, as he believed, a mistrial was justified by manifest necessity—by "a high degree of necessity ... and ... there was no less drastic alternative measure"—then re-indictment and retrial would be proper. The judge ultimately agreed with the prosecutor that the indictment for the wrong

crime deprived him of authority to continue, and concluded that "there is manifest necessity because ... it would be useless to go on with the trial, it would be wasting everybody's time ... [since] if [the jury] reached a decision, it would be subject to appeal." Defense counsel then, while repeating the advice she had received that "the [c]ourt [c]ould declare [a] mistrial and the case would be dismissed ... with prejudice," made clear her objection to a mistrial:

> [Defense counsel]: ... I'm not agreeing—I can't agree to the mistrial.
>
> [The court]: Right, you [are] objecting to the mistrial. No doubt about that.
>
> [Defense counsel]: Right.
>
> [The court]: ... I'm going to declare a mistrial based on manifest necessity, over your objection.

Following the mistrial, the grand jury returned an indictment that replaced the AWIKWA charge with AWIMWA and lesser charges. Appellant's written motion to dismiss the indictment on double jeopardy grounds was denied, and he proceeded to trial a second time.[3] A jury found him guilty of aggravated assault and related offenses, and he brought this appeal.

## II.

 "The prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant." *Arizona v. Washington*, 434 U.S. at 505, 98 S.Ct. 824.

---

2. If a juvenile is not subject to prosecution under § 16–2301(3)(A), he nevertheless may be "transfer[red] ... for criminal prosecution" under § 16–2307, but only upon request of the Attorney General for the District of Columbia and after a decision to transfer made by the Superior Court based on factors set forth in § 16–2307(e). *See, e.g., In re J.L.M.*, 673 A.2d 174 (D.C.1996).

3. Appellant, that is, took no pretrial appeal from the double jeopardy ruling, *see Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), something he was not required to do in order to preserve the issue for appeal. *See Vega v. United States*, 709 A.2d 1168 n. 1 (D.C.1998); *United States v. Gaertner*, 583 F.2d 308, 310 (7th Cir.1978).

This standard, which entails a high degree of necessity, requires a twofold inquiry by the trial court. First, the circumstances necessitating the mistrial must be extraordinary ones, sufficient to override the defendant's double jeopardy interests. Second, the trial judge must determine whether an alternative measure—less drastic than a mistrial—can alleviate the problem so that the trial can continue to an impartial verdict. On appeal, the government bears a heavy burden to justify the mistrial decision, and a reviewing court must resolve any doubt in favor of the liberty of the citizen.

*Vega, supra* note 3, 709 A.2d at 1171 (citations and internal quotation marks omitted); *see Douglas v. United States,* 488 A.2d 121, 132–33 (D.C.1985).

Appellant contends that there was no manifest necessity for a mistrial here because "it is firmly established in this jurisdiction that upon learning of [appellant's] status as 'child,' the trial court was *required* to proceed to verdict and determine post-verdict whether to enter judgment or refer the case to the Family Division for final disposition" (Br. for Appellant at 6–7; emphasis by appellant). He relies on D.C.Code § 16–2302(b) and our application of that provision in *Logan, supra.* We agree with appellant that § 16–2302(b), as construed and applied by the court in *Logan,* prescribed the right course of action here, one that made a mistrial unnecessary. Initially, however, we must consider the government's argument that appellant "invited" or at least acquiesced in the mistrial ruling, and thus may not complain of it or may do so only under review for plain error.

**A.**

■ The government asserts that, although appellant's counsel formally " 'objected' to declaration of a mistrial, [she] did not object to discharging the jury,"

because she agreed with, or did not dispute, the judge's conclusion that he lacked jurisdiction to continue to verdict on the faulty indictment (Br. for Appellee at 27). Double jeopardy, the government points out, protects a defendant's "valued right to have his trial completed by a particular tribunal," *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949), and by not questioning the judge's jurisdictional understanding, appellant relinquished that right and effectively invited the mistrial ruling, the government says. It cites in this regard decisions such as *Hart v. United States,* 863 A.2d 866, 875 (D.C. 2004) (defendant "estopped" on appeal from raising claim that contradicted a factual concession his attorney made at trial), and *Brown v. United States,* 627 A.2d 499, 508 (D.C.1993) ("defendant may not take one position at trial and a contradictory position on appeal").

We believe appellant is right, however, in replying that it is beside the point whether his attorney shared the judge's understanding that the defect in the indictment prevented the trial from continuing; what matters is that counsel objected to a mistrial and, further, that the judge knew she was doing so and thus recognized that the legal standard governing the mistrial decision was manifest necessity *vel non.* It is true, as the government stresses, that defense counsel first remained silent when the judge asked if anyone disagreed that the trial had to be terminated; and, almost to the end, counsel seemed to labor under the erroneous view that a mistrial would be in order *provided* it meant "dismiss[al] ... with prejudice" rather than a retrial. But defense counsel ultimately made explicit her objection to a mistrial, and her confusion about the law did not mislead the trial judge, who resolved to "declare a mistrial based on manifest necessity, over your objection," believing that to go forward with the trial would be a "useless

act" given his perceived loss of jurisdiction. In these circumstances, appellant's objection to a mistrial preserved his double jeopardy claim, even though he disavows on appeal his apparent agreement with the judge that the court had no jurisdiction to proceed. *See generally Yee v. City of Escondido,* 503 U.S. 519, 534–35, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992); *Salmon v. United States,* 719 A.2d 949, 953 (D.C. 1997) ("[W]e have differentiated, in our standard of review analysis, between 'claims' and 'arguments,' and . . . have held that although claims not presented in the trial court ordinarily will not be considered on appeal, parties are not limited to the precise arguments they made below.") (internal quotation marks and citations omitted).

Like the government, our dissenting colleague in effect disregards what appellant did (and what the trial judge understood him to do) which was to oppose a mistrial, relying instead on what appellant "desire[d]," which was a permanent end to the prosecution. Because the "objection to the mistrial [did not] occur[ ] . . . in the desire that the case continue," *post* at 1156, appellant's objection was tantamount to consent—an "implicit acquiescence in the grant of a mistrial." *Post* at 1156. We simply are unable to read an objection to a mistrial as its opposite—consent—merely because appellant expressed the desire for a broader, impermissible remedy of dismissal with prejudice. More importantly, the trial judge did not perceive appellant to be acquiescing in anything, which is why he told him that he was ruling on the basis of "manifest necessity, over your objection."

Finding no acquiescence in the mistrial, we turn to the merits of the double jeopardy argument.

## B.

 The statute whose effect we must decide is D.C.Code § 16–2302(b), one of two provisions dealing with the pre- and post-"jeopardy" discovery that "a minor defendant was a child at the time of an alleged offense":

(a) If it appears to a court, during the pendency of a criminal charge and before the time when jeopardy would attach in the case of an adult, that a minor defendant was a child at the time of an alleged offense, the court shall forthwith transfer the charge against the defendant, together with all papers and documents connected therewith, to the [Family] Division.

\* \* \*

(b) If at the time of an alleged offense, a minor defendant was a child but this fact is not discovered by the court *until after jeopardy has attached, the court shall proceed to verdict.* If judgment has not been entered, the court shall determine on the basis of the criteria in section 16–2307(e) whether to enter judgment or to refer the case to the Division for disposition. . . . [Emphasis added.]

The government points to our footnote observation in *Logan, supra,* that § 16–2302(b) "appears to govern the . . . problem that arises when a defendant is discovered to be *under-age* at some point after the United States Attorney's Office has filed charges and the Criminal Division has asserted jurisdiction," 483 A.2d at 669 n. 4 (emphasis added)—discovery, that is, of a *factual* mistake about age, unlike the legal mistake the grand jury made here. Nevertheless, our disposition of the appeal in *Logan* did not treat the statute as limited to a factual mistake about the defendant's status as a "child," but rather applied it to a situation closely resembling the one here.

In *Logan*, as in this case, the defendant had been indicted for AWIKWA despite being age 17 at the time of the offense. He agreed to plead guilty to the lesser included offense of assault with a dangerous weapon, but at the plea hearing raised the issue of whether § 16–2301(3)(A) authorized his prosecution as an adult for AWIKWA. The trial judge went forward and accepted the guilty plea after implicitly assuring Logan "that any challenge based on [his] status as a 'child' could be raised at a later date." *Id.* at 670. Before sentencing, Logan again challenged his prosecution as an adult, and the judge, while rejecting the challenge, deferred sentence to permit an interlocutory appeal on the issue, which this court then allowed. *Id.* On appeal, the primary question thus was whether " § 16–2301(3)(A)'s authorization of the prosecution of sixteen- and seventeen-year-olds charged with assault with intent to 'murder' permit[s] the government to institute adult criminal proceedings against a juvenile charged with assault with intent to kill under § 22–[401]." *Id.* After examining the common-law meaning of "murder" and the legislative history of § 16–2301(3)(A), and applying the rule favoring lenity in the construction of penal statutes, *id.* at 676 (citation omitted), we answered that question "no," holding that "a juvenile age 16 or 17 is excluded from the definition of 'child,' and thus is subject to adult criminal prosecution—without the necessity of a judicial transfer under § 16–2307—only when he ... is charged with assault with intent to commit murder." *Id.* at 677.

Our analysis continued with the question of remedy, and resolution of the appeal followed from the fact that, although Logan had "informed the trial court of his concerns before jeopardy attached," *id.* at 670, he nonetheless agreed "to go forward ... and to raise his jurisdictional challenge ... later...." *Id.* at 668. We held that

[b]ecause appellant willingly went forward with his guilty plea *and thus chose to permit jeopardy to attach,* we need not set aside the conviction in this case. Instead, we remand this case to the trial court *to complete its post-jeopardy ruling under § 16–2302.* We have determined that appellant is indeed a "child" under § 16–2301(3)(A); the trial court must now "determine on the basis of the criteria in section 16–2307(e) whether to enter judgment or to refer the case to the [Family] Division for disposition." *D.C.Code § 16–2302(b).*

*Id.* at 677 (emphases added).

In *Logan*, we accordingly applied § 16–2302(b) to a situation where, not factually but legally, the defendant had been discovered to be "a 'child' under § 16–2301(3)(A)" because the indicted crime was not one subjecting him to adult prosecution. Borrowing from § 16–2302(b)'s command that where the fact that "a minor defendant was a child ... is not discovered ... until after jeopardy has attached, the court shall proceed to verdict," we ordered the trial court to do the equivalent thing given Logan's guilty plea, and to "complete its post-jeopardy ruling" by sentencing him or by referring the case for juvenile disposition, as the factors in § 16–2307(e) dictated. We thereby rejected the notion that a post-jeopardy "discover[y]" identical to the one in this case deprives the trial court of jurisdiction to let a criminal prosecution run its course. Rather, *Logan* instructs that the proper course for the court on determining that a defendant—such as appellant or Logan—remains "a 'child' under § 16–2301(3)(A)" is to proceed to verdict and, in case of conviction, consider his status as a child in deciding whether to sentence him or to refer the case for juvenile disposition. The upshot is that, in this case, a mistrial over defense objection was not an available option—was not justified by a " 'high degree' of necessi-

ty," *Arizona v. Washington*, 434 U.S. at 516, 98 S.Ct. 824—because the legislature has prescribed the remedy for post-jeopardy eventualities of this kind.

The prosecutor's and the judge's reliance on *Illinois v. Somerville, supra*, was mistaken. In that case, as here, a defect in the indictment—there the failure to allege a necessary element of the crime charged—was discovered after jeopardy had attached. In upholding the trial judge's decision to declare a mistrial based on manifest necessity, the Supreme Court explained that, under Illinois law, an indictment's failure to allege an element of the crime was a jurisdictional defect correctable only by a mistrial. *See* 410 U.S. at 468, 93 S.Ct. 1066 ("The Illinois courts have held that even after a judgment of conviction has become final, the defendant may be released on habeas corpus, because the defect in the indictment deprives the trial court of 'jurisdiction.' "); *id.* at 469, 93 S.Ct. 1066 ("[T]he mistrial was, under Illinois law, the only way in which a defect in the indictment could be corrected."). D.C.Code § 16–2302(b), by contrast, as we interpreted it in *Logan*, dictates that the faulty indictment here had no similar effect on the trial court's authority to proceed to verdict once jeopardy had attached.

Nor is it surprising that the *Logan* court construed broadly, as reaching mistakes of fact *and* law about a defendant's status as "child," § 16–2302(b)'s authorization to complete a prosecution post-jeopardy despite a defect in the "jurisdictional" basis. In a unitary court system such as Superior Court, distinctions based on subject-matter jurisdiction have only limited significance, as decisions of this court since *Andrade v. Jackson*, 401 A.2d 990 (D.C.1979), instruct. We stated in *Robinson v. United States*, 769 A.2d 747 (D.C.2001), for example, that "[h]owever the Superior Court may be organized for administrative purposes into

divisions, ... the Court is a unitary entity.... The 'functional divisions' of the Court 'do not delimit their power as tribunals ... with general jurisdiction.' " *Id.* at 751 (quoting *Andrade*, 401 A.2d at 992). The government itself acknowledges here that "it is possible to view the provisions of Chapter 23 of Title 16 as dealing with the internal organization of authority within the Superior Court, and not as conferring or limiting subject-matter jurisdiction" (Br. for Appellee at 25 n. 27). We do not press that point too far, given that Congress has used expressly jurisdictional terms in defining the role of the Family Division (now the "Family Court") in juvenile matters. *See, e.g.,* § 16–2307(h) ("Transfer of a child for criminal prosecution terminates the jurisdiction of the Division over the child with respect to any subsequent delinquent act"; but "jurisdiction of the Division over the child is restored" if certain events occur). But, at a minimum, the absence of distinct jurisdictional lines in a unified court system such as the Superior Court supports *Logan's* reading of § 16–2302(b) as authorizing the trial court to complete an adult prosecution—with the option to refer the case for juvenile disposition instead of sentencing—when, after jeopardy, a juvenile is found not to be "subject to criminal treatment [under § 16–2301(3)(A)]." *Logan*, 483 A.2d at 674.

Our decision in *United States v. Sedgwick*, 345 A.2d 465 (D.C.1975), does not help the government. In *Douglas, supra*, although noting that "[d]ecisions which approve findings of manifest necessity turn on the particular facts of the case and thus escape meaningful characterization," we listed *Sedgwick* as one among cases "illustrat[ing] the types of matters that traditionally create a 'high degree' of necessity for a mistrial." *Douglas*, 488 A.2d at 132 n. 7. *Sedgwick* concerned a "mistrial based on [the] court's reasonable belief that [the]

defense was denied access to information to which it was entitled," *id.,* a fact-based determination that fell within decisions calling for "heightened deference" to the trial court because of its superior vantage point in "assess[ing] all the factors" that go into "making a necessarily discretionary determination." *Douglas,* 488 A.2d at 133 (quoting *Arizona v. Washington,* 434 U.S. at 510 n. 28, 98 S.Ct. 824). In this case, by contrast, the judge had no "discretion" to disregard § 16–2302(b) in light of our application of the statute in *Logan;* the course it prescribes left no room for a *"reasonable* but erroneous belief that the trial was irreparably flawed." *Sedgwick,* 345 A.2d at 471 (emphasis added). In short, a statute expressly providing the remedy for a post-jeopardy eventuality such as occurred here does not leave available the more drastic one of a mistrial over defense objection.

We hold, therefore, that double jeopardy barred appellant's retrial. As will often be true when a prosecution is terminated in this manner, the result seems harsh and something of a windfall—appellant, after all, like the prosecutor, could have raised the matter of the defective indictment before trial and forestalled any problem of jeopardy. But the manifest necessity standard is the balance struck by the Constitution between "the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury" and an objecting defen-

dant's "valued right to have the trial concluded by a particular tribunal," *Arizona v. Washington,* 434 U.S. at 505, 98 S.Ct. 824;[4] and that standard was not met here.

*Reversed and remanded.*

STEADMAN, Senior Judge, dissenting:

Although the point may not be so clear as to constitute "plain error," I agree with the majority's conclusion that D.C.Code § 16–2302(b) (2001), as interpreted in *Logan v. United States,* 483 A.2d 664 (D.C. 1984), permitted the trial in this case to continue to verdict, notwithstanding the belated discovery of the indictment error. I part company with the majority, however, in its conclusion that appellant is entitled to invoke the double jeopardy clause to forestall a second trial. I do so because of what I view as the appellant's acquiescence in the conclusion shared by all parties—trial court, government, and defense counsel—that the asserted jurisdictional bar forced the termination of the trial proceedings. In my judgment, this acquiescence bars him from now claiming a double jeopardy right against a new trial.[1]

When the government raised the issue of a possible jurisdictional defect, defense counsel said that her initial reaction was to ask that the case be dismissed with prejudice but asked for time to consult with the Public Defender Service. The trial court decided to give all parties time during the luncheon break to examine the situation.

---

**4.** "The Double Jeopardy Clause," it has been said,

> is and has always been, not a provision designed to assure reason and justice in the particular case, but the embodiment of technical, prophylactic rules that require the Government to turn square corners. Whenever it is applied to release a criminal deserving of punishment it frustrates justice in the particular case, but for the greater purpose of assuring repose in the totality of criminal prosecutions and sentences.

*Jones v. Thomas,* 491 U.S. 376, 396, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989) (Scalia, J., dissenting).

**1.** "This Court has implicitly rejected the contention that the permissibility of a retrial following a mistrial or a reversal of a conviction on appeal depends on a knowing, voluntary, and intelligent waiver of a constitutional right." *United States v. Dinitz,* 424 U.S. 600, 609 n. 11, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) (citations omitted).

Upon resumption of proceedings in the afternoon, the trial court at the outset framed the following inquiry:

> I'm going to ask a question. Is there either side to this case that disagrees that the case properly is to be terminated at this point? Now, when I say terminated, I'm using that term very loosely. I'm not saying terminated forever. I'm not saying terminated not forever. What I'm saying is there any part [sic]—or any side to this case that would suggest that we should continue further with the testimony and the evidence? So I'm taking the silence to answer that as no.

After a brief further discussion, the trial court without objection decided to dismiss the jury:

> Since it's no dispute that this trial right here or this part of it will cease as soon as I have them [the jury] come back in here, what's really I think the nuts and bolts of this is, does this case go away without prejudice or does this case come back? That's really the remaining issue. No more, no less.

Thereafter, during an extended dialogue and discussion, the issue as presented to the trial court was whether it would adopt the government's position that a mistrial should be declared on the basis of manifest necessity or that of the defendant that the case should be dismissed with prejudice. Thus, at the time of decision-making, all parties seemed to be in agreement that only two options existed, neither of which involved a continuation of the trial. Indeed, immediately prior to the formal declaration of a mistrial, this interchange occurred:

> THE COURT: Well, there doesn't seem to be any disagreement between you two in terms of the procedural [sic] moving forward, other than your [defense counsel] request would be with prejudice, your [prosecutor] request would be without prejudice.
> [DEFENSE COUNSEL]: Right.
> THE COURT: That's the only difference I've heard. So—
> [DEFENSE COUNSEL]: And I'm not agreeing—I can't agree to the mistrial.
> THE COURT: Right, you [are] objecting to the mistrial. No doubt about that.

Thus, the objection to the mistrial occurred not in the desire that the case continue, but rather solely on the untenable ground that the dismissal should have been made with prejudice.[2]

In this posture, I think that appellant has lost any right to now claim double jeopardy. We have typically declined to entertain an appellate claim that is contrary to a litigant's position at trial. *See, e.g., Brown v. United States,* 627 A.2d 499, 508 (D.C.1993) ("[A] defendant may not take one position at trial and a contradictory position on appeal."). Double jeopardy is a right that can be waived simply by failure to invoke it at the time of a second trial. *Christian v. United States,* 394 A.2d 1, 38 (D.C.1978) (citing *United States v. Scott,* 150 U.S.App. D.C. 323, 324, 464 F.2d 832, 833 (1972)), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979). It also can be waived by implicit acquiescence in the grant of a mistrial. *Anderson v. United States,* 481 A.2d 1299, 1300–01 (D.C.1984). I see no reason why defense counsel's actions here in the acquiescence

---

**2.** Defense counsel's argument for such a dismissal was based on double jeopardy grounds, since "Mr. Sanchez has already been through, since the 17th, two weeks as of tomorrow, I believe, maybe longer, of a trial and the case should be dismissed with prejudice." No argument is now made that such a dismissal would have been proper in the face of *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).

to the framing of the issue for consideration by the trial court and the options the trial court saw open to it—that is, acquiescence to termination as such, even though not to the particular method of accomplishing it—does not have the same effect in precluding the appellant from invoking at this point a claim of double jeopardy protection against a new trial.[3] *See People v. Tracey,* 221 Mich.App. 321, 561 N.W.2d 133, 137 (1997) ("[T]o determine whether consent makes retrial permissible under double jeopardy principles, the relevant issue is whether a defendant consented to the discontinuance of the trial, rather than whether he formally consented to the declaration of a mistrial."). I respectfully dissent.

---

**3.** Even if defense counsel had been aware of the existence of D.C.Code § 16–2302(b) and the *Logan* holding, her client would be served by silence in the face of the trial court's framing of the issue, thereby making possible the double jeopardy argument accepted by the majority here. It may not be wise to open the possibility of such sandbagging in the double jeopardy context, any more than in permitting counsel to withhold objections. *See Jackson*

*v. United States,* 650 A.2d 659, 663 (D.C.1994) ("If the decision not to object can be viewed as a tactical choice, it should not be considered plain error. An appellant is bound by the position taken by trial counsel and should not be allowed to reverse a position taken at trial in order to disavow the implications that flow from it." (citations and internal quotation marks omitted)).