**In re J.L.M., Appellant.**

No. 95–FS–375.

District of Columbia Court of Appeals.

Argued Dec. 13, 1995.
Decided Feb. 5, 1996.

Lorenzo Randle, Greenbelt, MD, for appellant.

Rosalyn Calbert Groce, Assistant Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel and Robert R. Rigsby, Deputy Corporation Counsel, were on the brief, for appellee.

Before FERREN, STEADMAN, and SCHWELB, Associate Judges.

FERREN, Associate Judge:

J.L.M., a sixteen-year-old (who was fifteen years old at the time of the offense and filing of the charges) appeals the trial court's order transferring the armed-murder charges against him from the Family Division, Juvenile Branch, to the Criminal Division for prosecution. J.L.M. contends the trial court erred in concluding that (1) his transfer was in the interest of the public welfare and the protection of the public security, and that (2) there were no reasonable prospects for his rehabilitation. We affirm.

## I.

On October 17, 1994, J.L.M. allegedly fired a revolver at a group of three individuals, killing one of them. The next day he was charged as a juvenile with first degree murder while armed, D.C.Code §§ 22–2401, –3202(a)(1) (1994 Supp.); two counts of assault with intent to kill while armed, *id.* §§ 22–501, –3202(a)(1) (1989 Repl. & 1994 Supp.); carrying a pistol without a license, *id.* § 22–3204(a) (1994 Supp.); possession of an unregistered firearm, *id.* § 6–2311(a) (1994 Supp.); and unlawful possession of ammunition, *id.* § 6–2361 (1989 Repl.). The District of Columbia, appellee, filed a motion to transfer J.L.M. for criminal prosecution pursuant to D.C.Code § 16–2307 (1995 Supp.).[1]

A hearing on the District's motion to transfer J.L.M. began on March 7, 1995. In support of its motion, the District presented evidence of J.L.M.'s past criminal behavior and of his experience in a juvenile treatment facility. The District established that on October 16, 1992, J.L.M., then age 13, had stabbed a 17–year–old with a knife, for which he was charged with assault with intent to murder. After adjudication as a delinquent, J.L.M. was committed to the Maryland Department of Juvenile Services, which enrolled him in the Charles H. Hickey School, a juvenile treatment facility in Baltimore, Maryland. J.L.M. was treated at the Hickey School from November 30, 1993 until his release on June 7, 1994, when he was placed in the custody of his grandmother and electronically monitored. J.L.M., however, violated the conditions of his release by leaving his grandmother's house without consent on June 29, 1994. The District showed that J.L.M.'s whereabouts were unknown until the October 17, 1994 shooting.

The District also presented the testimony of officials involved in J.L.M.'s treatment at the Hickey School. Kevin A. Carter, J.L.M.'s youth counselor and case manager, testified that J.L.M. had had problems controlling his anger, respecting authority, and interacting with other juveniles at the school, and had been involved in two fights during his stay. Carter also discussed J.L.M.'s behavior and attitude at the Hickey School, which Carter believed had not improved until shortly before J.L.M. was scheduled to be released. Allen Wright, J.L.M.'s probation officer during his detention at the Hickey School, testified that J.L.M.'s attitude and progress had been inconsistent, that he had had difficulty controlling his impulses, and that his behavior had worsened by the time

---

1. This case does not concern the exercise of discretion by the United States Attorney to prosecute an individual who is sixteen or seventeen years old as an adult for murder or other violent offenses specified in D.C.Code § 16–2301(3)(A) (1989 Repl. & 1995 Supp.). *See United States v. Hobbs*, 594 A.2d 66, 67 (D.C.1991); *In re M.R.*, 525 A.2d 614, 615 (D.C.1987); *In re C.S.*, 384 A.2d 407 (1977).

of his release. Both Carter and Wright had disagreed with the decision to release J.L.M. from the Hickey School, and, at the time of the hearing, Wright believed that J.L.M. should not be transferred to the adult system for prosecution.

District personnel responsible for the treatment of juvenile offenders testified about J.L.M.'s rehabilitative prospects. Katherine Washington, the acting supervisor of treatment services at Oak Hill Youth Center, where J.L.M. had been detained after the October 17 shooting, stated that J.L.M.'s chances of rehabilitation at Oak Hill depended on the effort he put into the services Oak Hill offered. While at Oak Hill, however, J.L.M.'s behavior had not been "as good as it could be." Michelle Hunt, a probation officer with the Superior Court assigned to prepare a transfer summary for the hearing, testified that J.L.M. had the potential to be rehabilitated, but only after a "long term, intensive therapeutic placement."

Patricia Clark, a social worker with the Department of Human Services, Youth Services Administration, testified that J.L.M. probably would be placed in one of two facilities for violent offenders, Oak Hill or the High Plains Youth Center in Colorado. Clark was unable to state with any assurance whether treatment at either facility would prevent J.L.M. from engaging in violent behavior in the future. Michael Benoit, a supervisor in the District's Placement Branch Residential Placement Unit responsible for placing juveniles in treatment facilities, recommended High Plains as the appropriate treatment facility for J.L.M. Benoit testified that, in the absence of any treatment, J.L.M. presented a danger to the community. With treatment, however, J.L.M.'s potential for further violent activity would "lessen to a great degree the chances of his acting out similarly."

The defense presented the testimony of a clinical psychologist, Dr. Chauncey Fortt. Dr. Fortt had interviewed and tested J.L.M. for approximately four hours before the hearing. Dr. Fortt described J.L.M. as being very cooperative and as lacking the "hardened core of the predator." Dr. Fortt further reported that J.L.M. exhibited no traces of psychosis. According to Dr. Fortt, J.L.M. presented a very high risk for delinquent behavior in his current environment but was capable of rehabilitation. Dr. Fortt proffered a study on recidivism rates for juveniles enrolled in the High Plains facility to support his opinion. On cross-examination, Dr. Fortt was unable to state with certainty whether J.L.M. would engage in violent behavior after successfully completing a program designed to deal with his problems; he characterized J.L.M.'s potential for further involvement in violent behavior as "average."

On April 7, 1995, the trial court granted the District's motion to transfer after concluding that (1) J.L.M. should be transferred for criminal prosecution as an adult in the interest of public welfare and protection of public security, and that (2) there were no reasonable prospects for J.L.M.'s rehabilitation. J.L.M. noted a timely appeal.

## II.

### A.

■ D.C.Code § 16–2307(d) (1995 Supp.) establishes a two-criteria approach for all transfer determinations:

Unless a commitment under subsection (c) of this section has intervened, the Division shall conduct a hearing on each transfer motion to determine whether to transfer the *child for criminal prosecution*. This hearing shall be held within ten days (excluding Sundays and legal holidays) of the filing of the transfer motion. *The Division shall order the transfer if [1] it determines that it is in the interest of the public welfare and protection of the public security and [2] there are no reasonable prospects for rehabilitation.* A statement of the Division's reasons for ordering the transfer shall accompany the transfer order. The Division's findings with respect to each of the factors set forth in subsection (e) of this section relating to the public welfare and protection of the public security shall be included in the statement. This statement shall be available upon request to any court in which the transfer is challenged, but shall not be available to the

trier of fact of the criminal charge prior to verdict. (Emphasis added.)

Thus, in applying the first criterion of § 16–2307, the trial court must consider the danger to the public welfare and safety if the juvenile is not processed as an adult, while the second criterion focuses the court's attention on the juvenile's potential for rehabilitation.

This two-criteria approach is of recent vintage. The previous formulation of the transfer provision focused the trial court's attention exclusively on the prospects for rehabilitating the juvenile before his or her majority. *See* D.C.Code § 16–2307(d) (1989 Repl.).[2] Under that formulation, when deciding whether to transfer, the trial court was to consider five factors relevant to rehabilitation listed in § 16–2307(e) (1989 Repl.).[3] The District had "the burden of showing by a preponderance of the evidence" that, in light of the § 16–2307(e) factors, there were no "reasonable prospects for rehabilitating"

**2.** D.C.Code § 16–2307(d) (1989 Repl.) provided:

Unless a commitment under subsection (c) of this section has intervened, the Division shall conduct a hearing on each transfer motion *to determine if there are reasonable prospects for rehabilitating the child before his [or her] majority.* Such hearing shall be held within ten days (excluding Sundays and legal holidays) of the filing of the transfer motion. *In any such hearing, the child who is the subject of the hearing shall not be required to establish that there are reasonable prospects for his [or her] rehabilitation prior to his [or her] majority. Unless the Division determines that there are reasonable prospects for rehabilitating the child before his [or her] majority, it shall order the transfer of the child for criminal prosecution* and notify the United States attorney of such order. Accompanying the order of transfer shall be a statement of the reasons of the Division for ordering the transfer of the child. *Included in the statement shall be the Division's findings with respect to each of the factors set forth in subsection (e) relating to the prospects for the rehabilitation of the child.* This statement shall be available upon request to any court in which the transfer is challenged, but shall not be available to the trier of fact of the criminal charge prior to verdict. (Emphasis added.)

**3.** Section 16–2307(e) (1989 Repl.) provided in part:

Evidence of the following factors shall be considered in determining whether the[re] are reasonable prospects for rehabilitating a child prior to his majority:

the juvenile "prior to his [or her] majority." Super.Ct.Juv.R. 109(c) (1995).

The Criminal and Juvenile Justice Reform Amendment Act of 1992 ("Reform Act"), D.C.Law 9–272, 40 DCR 796 (effective date May 15, 1993), significantly amended § 16–2307(d) of the transfer statute by requiring the trial court to consider the two criteria quoted in full at the outset of Part II: "the interest of public welfare and the protection of public security" and the juvenile's "prospects for rehabilitation." *Id.* at § 101, 40 DCR at 797, codified at D.C.Code § 16–2307(d) (1995 Supp.). The Reform Act thus added a second, public welfare/security criterion to all transfer determinations. The Act further amended § 16–2307(d) by adding language (quoted earlier) to indicate that "the factors set forth in subsection (e)" would apply in determining whether the transfer was in the interest of "the public welfare and protection of the public security." *Id.*[4]

(1) the child's age;
(2) the nature of the present offense and the extent and nature of the child's prior delinquency record;
(3) the child's mental condition;
(4) the nature of past treatment efforts and the nature of the child's response to past treatment efforts; and
(5) the techniques, facilities, and personnel for rehabilitation available to the Division and to the court that would have jurisdiction after transfer.

**4.** This language is substituted for the language in D.C.Code § 16–2307(d) (1989 Repl.), *supra* note 2, that requires "findings with respect to each of the factors set forth in subsection (e) relating to the prospects for the rehabilitation of the child." No explanation is provided as to why the "public welfare" and "public security" language was substituted for, rather than added to, the previous language applying the factors in subsection (e) to the "prospects for rehabilitating the child." Subsection (e) itself, however, expressly states that the listed factors apply to prospects for rehabilitation. Accordingly, the new references in subsection (d) to assessing "public welfare" and "public security" in accordance with subsection (e), when combined with the language of subsection (e) itself referring to prospects for rehabilitation, mean that the court is to apply subsection (e) factors when addressing both of the criteria that now govern the transfer decision.

The Reform Act also slightly amended D.C.Code § 16–2307(e)(4), *supra* note 3, so that the fourth factor to be considered in determining prospects for rehabilitation now reads as follows:

Finally, the Reform Act amended § 16–2307 by adding new subsections (e–1) and (e–2):

> (e–1) For purposes of the transfer hearing the Division shall assume that the child committed the delinquent act alleged.

> (e–2) There is a rebuttable presumption that a child 15 through 18 years of age who has been charged with any of the following offenses, should be transferred for criminal prosecution in the interest of public welfare and the protection of the public security:

> (1) Murder, forcible rape, burglary in the first degree, robbery while armed, or assault with intent to commit any such offense;

> (2) Any offense listed in paragraph (1) of this subsection and any other offense properly joinable with such an offense;

> (3) Any crime committed with a firearm; or

> (4) Any offense that if the child were charged as an adult would constitute a violent felony and the child has three or more prior delinquency adjudications.

*Id.,* codified at D.C.Code §§ 16–2307(e–1), (e–2) (1995 Supp.).

The "rebuttable presumption" in § 16–2307(e–2) appeared to reduce if not eliminate any evidentiary burden on the District created by the new public welfare/security criterion in § 16–2307(d), but the Reform Act left unclear what effect, if any, this rebuttable presumption had on the District's theretofore required showing under the rehabilitation criterion of § 16–2307(d).[5] Accordingly, the question presented is whether the (e–2) rebuttable presumption puts the burden on the juvenile to come forward with evidence both that (1) the transfer would not be "in the interest of the public welfare and protection of the public security," and that (2) there are "reasonable prospects for rehabilitation," or whether the juvenile takes on the burden of the first criterion while the District retains the burden as to the latter.

Faced with this question of statutory interpretation, the trial court concluded, by reference to the plain language of the statute, that the new public welfare/security criterion in § 16–2307(d) was analytically distinct from the rehabilitation criterion. The court accordingly interpreted § 16–2307(e–2)'s rebuttable presumption of transfer as shifting from the District to the juvenile only the evidentiary burden under the newly created public welfare/security criterion; the burden of showing no reasonable prospects for rehabilitation remained on the District. The trial court concluded:

> [I]f the government can prove that there are no reasonable prospects for rehabilitation, but a respondent is able to rebut the § 16–2307(e–2) public welfare and safety presumption, the court cannot transfer the respondent for adult prosecution because both prongs of § 16–2307(d) must be satisfied before the transfer can be or-

---

(4) the child's response to past treatment efforts including whether the child has absconded from the legal custody of the Mayor or a juvenile institution;

D.C.Law 9–272, § 101, 40 DCR 796, 797 (effective date May 15, 1993), codified at D.C.Code § 16–2307(e)(4) (1994 Supp.).

The Parental Responsibility Amendment Act of 1994, D.C.Law 10–227, 42 DCR 4 (effective date March 16, 1995), added a sixth factor under § 16–2307(e) for use in determining the juvenile's prospects for rehabilitation. To the first five factors listed *supra* at note 3, the Council added the following factor:

(6) The potential rehabilitative effect on the child of providing parenting classes or family counseling for one or more members of the child's family or for the child's caregiver or guardian.

*Id.* at § 3, 42 DCR at 5, codified at D.C.Code § 16–2307(e)(6) (1995 Supp.). This provision had not been enacted at the time the trial court considered this case.

**5.** Super.Ct.Juv.R. 109(c) was later amended to reflect the additional, public welfare determination the Reform Act now requires under § 16–2307(d). Rule 109(c) now provides:

> Evidence which is material and relevant shall be admissible at the transfer hearing. Except as provided by D.C.Code § 16–2307(e–2), the Corporation Counsel shall have the burden of showing by a preponderance of the evidence that it is in the interest of the public welfare and protection of the public security that the respondent be transferred for criminal prosecution and that there are no reasonable prospects for rehabilitating the respondent within the jurisdiction of the Family Division prior to the respondent's majority.

Super.Ct.Juv.R. 109(c) (Nov. 1995 Supp.).

dered.... Likewise, for more dangerous juveniles who cannot rebut the presumption of § 16–2307(e–2), if the government cannot prove that there are no reasonable prospects for rehabilitation, the court is precluded from ordering the transfer because again both prongs of the transfer test are not satisfied.

The Court also concluded, however, that if the juvenile could not rebut the § 16–2307(e–2) presumption, "a respondent's dangerousness becomes an additional factor for the court to consider in deciding whether the government has proven there are no reasonable prospects for rehabilitation."

Applying this interpretation of § 16–2307 to the present case, the trial court concluded that J.L.M., whose age and crimes qualified him for treatment under § 16–2307(e–2), failed to rebut the presumption that his transfer was in the interest of the public welfare and protection of the public security. The trial court then addressed J.L.M.'s prospects for rehabilitation. The court concluded, after considering the five factors specifically enumerated in § 16–2307(e), see *supra* notes 2 and 3—plus J.L.M.'s inability to rebut § 16–2307(e–2)'s presumption—that the District had proved by a preponderance of the evidence that J.L.M. had no reasonable prospects for rehabilitation. The trial court accordingly ordered J.L.M. transferred for criminal prosecution.

### B.

■ Both the District and J.L.M. contend the trial court erred. The District argues that § 16–2307(e–2) creates a rebuttable presumption of transfer that shifts to the juvenile the burden of rebuttal as to both the public welfare/security and the rehabilitation criteria. More specifically, the District argues that, in light of legislative history that demonstrates the Council adopted the Reform Act to take more severe steps to curb and punish juvenile crime,[6] the Council created a rebuttable presumption that a child, age

15 through 18, who is charged with any of the enumerated offenses "should be transferred for criminal prosecution"—period. According to the District, the words immediately following the presumption language in (e–2)—"in the interest of public welfare and the protection of public security"—are words generally expressing the reason why the Council enacted a presumption applicable to both criteria; they are not words limiting the presumption to only one of two criteria now to be satisfied for a transfer. If this were not the case, says the District, the Council's efforts to make transfers of juveniles for prosecution easier would be frustrated by an interpretive result that makes transfer no less difficult, and perhaps even more difficult, for two reasons: (1) the District would still have to show no reasonable prospects for rehabilitation even when the juvenile cannot rebut the presumption that transfer promotes the public welfare and security, and (2) the District's ability to demonstrate that there are no reasonable prospects for rehabilitation no longer will be enough to warrant transfer if the juvenile can rebut the presumption that transfer will promote the public welfare and security.

J.L.M., on the other hand, agrees with the trial court's determination that the District retains the evidentiary burden under the rehabilitation prong but contends that the trial court erred because, when deciding whether the District had proved there were no reasonable prospects for rehabilitating J.L.M., the Court improperly factored in J.L.M.'s failure to rebut the § 16–2307(e–2) presumption. According to J.L.M., the court's creation of an additional factor bearing on rehabilitation violates the statutory limitation of applicable factors to the ones listed in § 16–2307(e). *See* D.C.Code § 16–2307(d).

■ We focus, first, on the District's argument. It is based, in part, on a false premise. True: the Council appeared to want to make it easier to transfer for criminal prosecution those juveniles who are charged with committing violent crimes; the

---

**6.** The legislative history shows that the origin of the Reform Act was concern "about increased criminal conduct by juveniles" and the perceived need to alter the current treatment of "dangerous and violent juveniles who commit acts of random violence and drive-by shootings." Committee On The Judiciary, Report To The Council of the District of Columbia on the "Criminal and Juvenile Justice Reform Amendment Act of 1992," at 2 (Nov. 5, 1992).

rebuttable presumption itself suggests that intention. But in adding a new, public welfare/security criterion to the existing rehabilitation criterion, the Council also apparently intended to make criminal transfers more difficult with respect to charges of lesser crimes to which the rebuttable presumption does not apply. Under amended § 16–2307(d), as implemented by Super.Ct.Juv.R. 109(c), see *supra* note 5, the District now has the evidentiary burden to satisfy two criteria before cases against juveniles not involving violent crimes can be transferred for criminal prosecution.[7]

■ The Council, of course, assuredly could have made it easier to transfer juveniles charged with violent crimes if it had retained a single-criterion approach to transfers by providing that the Family "Division shall order the transfer if [1] it determines that it is in the interest of the public welfare and protection of the public security *or* [2] there are no reasonable prospects for rehabilitation" (emphasis added), and then added the rebuttable presumption as to the first criterion. This would have meant that, if the juvenile failed to carry the evidentiary burden as to public welfare/security, there would be a transfer, and that even if the juvenile carried that burden, the District could force a transfer by showing no reasonable prospects for rehabilitation, as it always has had to do. The statute, however, says "and," not "or." As amended by the Reform Act, D.C.Code § 16–2307(d) (1995 Supp.) plainly establishes a two-criteria approach to all transfer determinations by providing that a transfer shall be ordered if—but only if—"it is in the interest of the public welfare and protection of the public security *and* there are no reasonable prospects for rehabilitation." § 16–2307(d) (emphasis added). Both criteria now must be met. If that were not so, *i.e.*, if the "and" were an "or," the transfer for criminal prosecution of juveniles involved in lesser crimes theoretically would be easier than before adoption of the Reform Act since the government would have two

alternative criteria to work with—a result the Council does not appear to have intended.

■ Accordingly, the question remains: whether, as the District maintains, there is a sound basis for construing § 16–2307(e–2) to create a presumption of transfer of juveniles charged with violent crimes unless a juvenile can rebut that presumption as to both applicable criteria. We agree with the trial court that the presumption does not apply to both criteria. The trial court's conclusion that the transfer presumption applies only to the public welfare/security criterion is based on a well-established proposition: courts should favor interpretations indicated by the plain language of a statute. See *J. Parreco & Son v. Rental Housing Comm'n,* 567 A.2d 43, 45 (D.C.1989); *Peoples Drug Stores v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc). Despite the District's argument predicated upon legislative intent, the "primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he [or she] has used." *Varela v. Hi–Lo Powered Stirrups, Inc.* 424 A.2d 61, 64 (D.C.1980) (en banc) (quoting *United States v. Goldenberg,* 168 U.S. 95, 102–03, 18 S.Ct. 3, 4, 42 L.Ed. 394 (1897)).

■ According to plain statutory language: "There is a rebuttable presumption that [the juvenile] ... should be transferred for criminal prosecution *in the interest of public welfare and the protection of the public security.*" D.C.Code § 16–2307(e–2) (emphasis added). We read the italicized language as a limitation, especially because that language is identical to that used to define the public-welfare/security criterion in § 16–2307(d). The words of (e–2), therefore, strongly suggest that the rebuttable presumption is narrower than the District maintains. The language indicates that the presumption eliminates only one of the District's evidentiary burdens—the need to show that a juvenile's transfer is "in the interest of

---

7. In recently amending Super.Ct.Juv.R. 109(c), see *supra* note 5, the Superior Court Board of Judges, on recommendation from its Rules Committee, has interpreted D.C.Code § 16–2307(d), as amended, as requiring the District to satisfy separately, by a preponderance of the evidence, both the public welfare/security criterion and the rehabilitation criterion in juvenile cases where the § 16–2307(e–2) presumption applicable to violent crimes does not apply.

public welfare and the protection of the public security," § 16–2307(d)—while leaving the District with the burden of showing that "there are no reasonable prospects for rehabilitation." *Id.* We cannot accept the District's broad interpretation that would characterize the reference to public welfare and public security in subsection (e–2) as embracing the rehabilitation criterion or, alternatively, as indicating mere surplusage.

We also reject J.L.M.'s contention that the trial court may not consider a juvenile's failure to rebut the § 16–2307(e–2) presumption when assessing the District's required showing under the rehabilitation criterion in § 16–2307(d). J.L.M.'s argument that such failure to rebut is not explicitly listed in § 16–2307(e), *supra* notes 3 and 4, misses the point because the very failure to rebut is, itself, the result of applying the subsection (e) factors; that failure is not, in itself, a wholly separate analysis. The reason for this is clear: the information proffered by the juvenile in rebuttal of the presumption, in order to show that transfer for prosecution is not required because the juvenile is not a danger to the public, is germane to the issue of a juvenile's rehabilitative prospects. This is true because the presumption typically can be rebutted only by an evidentiary showing that the juvenile is amenable to treatment or rehabilitation. Furthermore, the quality of the juvenile's showing will be relevant to the trial court's consideration of whether the District has met its burden under the rehabilitation criterion. If, for example, a juvenile rebuts the presumption by showing that his or her crime was the product of a mental disorder that could easily be treated with drugs, then the trial court could rightfully expect a correspondingly greater showing by the District that there are actually no reasonable prospects for rehabilitation. Alternatively, an unrebutted presumption that a juvenile is a danger to the community would suggest that a lesser showing by the District would suffice to prove that there are no reasonable prospects for rehabilitation. We therefore conclude that a trial court permissibly may consider whether a juvenile has rebutted the presumption created by § 16–2307(e–2) when deciding whether the District has satisfied its burden under § 16–2307(d) to show no reasonable prospects for rehabilitation.

## III.

We turn now to the trial court's determinations pursuant to § 16–2307. J.L.M. contends the court erred in concluding that (1) he failed to rebut the presumption that his transfer was in the interest of public welfare and the protection of public security, and that (2) the government proved there were no reasonable prospects for J.L.M.'s rehabilitation.

## A.

Because the appropriate standard of review for transfer determinations made pursuant to § 16–2307 has never been established in our jurisdiction, we first must resolve that issue. In agreement with the parties, we conclude that, in order to reap the benefits of the trial court's "perspectival and institutional advantages," *Johnson v. United States,* 398 A.2d 354, 362 (D.C.1979), the decision whether to transfer a juvenile for prosecution as an adult must be committed to the trial court's sound discretion.

In *Johnson,* we set forth two basic rationales for committing matters to trial court discretion: (1) the trial court's "superior opportunity to get 'the feel of the case,' " *id.* (quoting *Noonan v. Cunard Steamship Co.,* 375 F.2d 69, 71 (2nd Cir.1967) (Friendly, J.)), by direct observation of all the evidence, and (2) "the impracticality of framing a rule of decision where many disparate factors must be weighed," *id.* Because both rationales are strongly implicated in a trial court's decision to transfer a juvenile for criminal prosecution, our review of the trial court's transfer decision should be "supervisory in nature and deferential in attitude." *Id.*

Transfer determinations are reached only after a hearing, *see* § 16–2307(d), at which the trial court engages in "direct observation of the facts," *Johnson,* 398 A.2d at 362, drawn from the witnesses and sometimes from the juvenile. The court also may ask questions of its own. The trial court, therefore, informed by impressions and first-hand

observations, is well placed to make the difficult determination whether a juvenile has become so hardened to criminal behavior that criminal prosecution is warranted. This determination, moreover, "present[s] individual fact patterns that are virtually unique," *id.,* requiring the court to weigh a variety of factors with each transfer decision. *See* supra notes 3 and 4. Because the trial court enjoys both a superior adjudicatory vantage point and must consider a variety of factors when making the decision, we adopt the standard applied in most other jurisdictions and reverse only for abuse of discretion. *See, e.g., Bell v. State,* 317 Ark. 289, 877 S.W.2d 579, 581 (1994); *People v. Cooks,* 271 Ill. App.3d 25, 207 Ill.Dec. 734, 742, 648 N.E.2d 190, 198 (1995); *Commonwealth v. Austin,* 444 Pa.Super. 601, 664 A.2d 597 (1995); *C.M. v. State,* 884 S.W.2d 562, 563 (Tex.Ct.App. 1994); *Hansen v. State,* 904 P.2d 811, 824 (Wyo.1995).

ly committed assault with intent to murder and that he had been exposed to approximately a year of rehabilitative treatment at a juvenile detention facility only months before he was charged with murder. Testimony of witnesses, including Dr. Fortt, established that J.L.M. presented a risk to the community in the absence of treatment. None of the witnesses, moreover, was able to state that treatment could deter J.L.M. from engaging in future violent acts to any certain degree. In light of J.L.M.'s prior criminal behavior, testimony that J.L.M. represented a threat to public safety in the absence of treatment, and testimony establishing the uncertainty whether J.L.M.'s violent behavior could be curbed even with proper intervention, the trial court did not abuse its discretion in concluding that J.L.M. failed to rebut the presumption that his transfer was in the interest of public welfare and the protection of public security.

### B.

■ We find no abuse of discretion in the trial court's ruling that J.L.M. failed to rebut the presumption that his transfer was "in the interest of the public welfare and the protection of the public security." D.C.Code § 16–2307(d).[8] In order to rebut the presumption, J.L.M. presented the testimony of a single expert, Dr. Fortt, who acknowledged that J.L.M. was a high risk for delinquent behavior and that it was uncertain whether J.L.M. would engage in violent behavior in the future even after completing a program designed to address his problems. Quantifying J.L.M.'s future potential for violence, Dr. Fortt characterized that potential as "average." Dr. Fortt was unable to provide any statistical data to show that the facility where he recommended treatment for J.L.M. could curb the behavior of violent juvenile offenders.

Other evidence adduced at the transfer hearing established that J.L.M. had previous-

### C.

■ Nor did the trial court abuse its discretion in concluding that the government had met its burden of showing that J.L.M. had "no reasonable prospects for rehabilitation." D.C.Code § 16–2307(d). In making this determination, the trial court considered each of the five factors specified at the time in § 16–2307(e): J.L.M.'s age; the nature of his offense and his prior delinquency record; his mental condition; his response to past treatment efforts; and the techniques, facilities, and personnel available for his rehabilitation. The trial court specifically noted that J.L.M. was charged with committing "the most serious offense a person can commit in a civilized society"; he had previously committed a violent offense; prior treatment efforts had failed to alter J.L.M.'s violent tendencies; and the sole program identified as potentially adequate for J.L.M. could not deter his violent behavior to any certain degree.[9] The trial court also considered

---

8. J.L.M. also suggests that the rebuttable presumption is unconstitutional when read in connection with the statutory assumption "that the child committed the delinquent act alleged." D.C.Code § 16–2307(e–1). We have previously considered the question and concluded that the § 16–2307(e–1) assumption does not violate a

juvenile's right to due process. *See In re W.T.L.,* 656 A.2d 1123, 1131–32 (D.C.1995).

9. J.L.M. contends that Dr. Fortt's opinion that J.L.M.'s prospects developing "pro-social" associations and new friends were "average" is suffi-

**184**

J.L.M.'s failure to rebut § 16–2307(e–2)'s presumption of transfer. Based on all the foregoing evidence, the court did not abuse its discretion in concluding that the government established no reasonable prospects for rehabilitating J.L.M.

### IV.

Because the trial court did not err either in interpreting and applying § 16–2307, or in concluding that J.L.M.'s transfer is in the interest of public welfare and public security and that there are no reasonable prospects for rehabilitating J.L.M., the decision of the trial court is affirmed.

*So ordered.*

SCHWELB, Associate Judge, concurring:

I join the judgment of the court and agree with most of the opinion. I add a few words about the practicalities of the situation.

Although the statute deals with the protection of the public and prospects for rehabilitation as two separate concepts, the difference between them is more illusory than real. Logically, the focus of the inquiry must be on whether the respondent is likely to be dangerous, and whether he will probably have been rehabilitated, *at the time the juvenile system has completed its treatment of him.* But if the respondent is still dangerous at that time, he cannot reasonably be viewed as having been rehabilitated. If he is then no longer dangerous, on the other hand, then rehabilitation will have effectively occurred. It would be a rare case indeed in which a rehabilitated respondent remained dangerous, or an unrehabilitated one was not.[1]

Framed in non-technical terms, the task of the judge at the transfer hearing is to make an informed prediction as to whether, if treated as a juvenile, the respondent, at the

cient evidence, without more, to defeat the District's showing that J.L.M. had no reasonable prospects for rehabilitation. We reject the argument, however, because Dr. Fortt never identified in what sense J.L.M.'s prospects were average; *e.g.,* average for a murderer, average for a sixteen-year-old juvenile involved in crime; average for a sixteen-year-old juvenile charged with murder. The prediction, moreover, was based upon the assumption, which the trial court was free to reject, that J.L.M. would have available

end of the road, (1) will probably no longer be dangerous, and (2) will probably have been rehabilitated. Because the two concepts are virtually indistinguishable, it makes little sense to me to place the burden on the District as to one prong and the burden on the respondent as to the other. Because the statute is written in the way that it is, however, I cannot quarrel with the majority's disposition.

and take advantage of a therapeutic program specifically suited to his individual needs.

1. There may be aspects of rehabilitation other than elimination of dangerousness, but I think they are, at most, of secondary importance here. A court would not ordinarily refer a non-dangerous respondent to the adult system because, say, he or she could not learn to read.